# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF PENNSYLVANIA

IN RE:

| | | |
|---|---|---|
| **JOHN R. DELLER,** | : | **Bankruptcy No. 08-21579 BM** |
| | : | |
| | : | |
| **Debtor** | : | **Chapter 7** |
| **JAMES R.HILLMEYER,** | : | |
| | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **Adversary No. 08-2148 BM** |
| | : | |
| **JOHN R. DELLER,** | : | **Complaint For Determination That** |
| | : | **Debt Is Nondischargeable** |
| **Defendant** | : | |

## <u>MEMORANDUM OPINION</u>

### PREFACE

Plaintiff James Hillmeyer seeks a determination that a debt owed by debtor John Deller in connection with debtor's sale of twenty-five vehicles is not dischargeable. He relies on §§ 523(a)(2)(A) and (a)(4) of the Bankruptcy Code as well as a pre-petition agreement in which debtor waived the discharge of the debt in bankruptcy. Plaintiff also seeks relief from the automatic stay to permit him to have the amount of the debt determined in a state court proceeding which was pending when debtor filed his bankruptcy petition.

We conclude that the debt owed in connection with the sale of nine of the vehicles is not dischargeable while the debt owed in connection with the sale of the other sixteen vehicles is dischargeable. Relief from the automatic stay will be granted so that debtor

may proceed to state court to have the amount of the debt that is not dischargeable determined by that court.

## BACKGROUND

Debtor was a licensed auto dealer who did business as New Image Auto Sales, which was in the business of selling used automobiles and trucks.  Debtor operated the business for approximately twelve years until it permanently closed in June of 2006. William Boyd and Steve Greco were employed by debtor at all times relevant to this adversary action.

Plaintiff also was a licensed auto dealer who did business as Central Motors Auto. He purchased used vehicles at wholesale and sold them at retail.

Debtor and Plaintiff entered into an agreement in 2004 concerning the sale of used vehicles at debtor's place of business.  Plaintiff was to place used vehicles on debtor's used car lot.  Title to the vehicles was in the name of Central Motors.  Debtor was to sell the vehicles at retail to third parties at a price agreed to by debtor and the third party.  Plaintiff did not dictate the price at which the vehicles were to be sold.

The net profit realized from the sale of a vehicle was to be divided equally between debtor and plaintiff after plaintiff's costs, which included the price plaintiff had paid for the vehicle and the cost of repairing it, were accounted for.  Debtor was to remit payment to plaintiff in an amount equal to plaintiff's costs plus one-half of the net profits and was to retain the other one-half of the net profit for himself.

Their business relationship fared reasonably well for the first year or so.  Debtor occasionally did not promptly remit the payment which plaintiff was supposed to receive for a vehicle, but soon thereafter would "catch up" and become current on his obligation to plaintiff.

The relationship began to deteriorate in 2005, when debtor fell further behind in remitting to plaintiff the amounts to which he was entitled from the sale of a vehicle. Debtor admitted at trial that he frequently used all or a portion of the amount to which plaintiff was entitled to pay his other creditors instead of paying plaintiff.

Debtor executed a document at plaintiff's insistence on September 22, 2005, in which debtor personally guaranteed payment of any amounts owed to plaintiff in connection with the vehicles.  Among other things, debtor's agreed that his liability to plaintiff was absolute and would not be affected in the event debtor subsequently became a debtor in bankruptcy.

On December 22, 2006, plaintiff commenced a civil action against debtor and William Boyd in state court in connection with the sale of used vehicles[1].  The complaint consisted of three counts.

Count I was against debtor and William Boyd and stated a claim for "fraudulent conversion and conversion".  Plaintiff identified ten vehicles sold by debtor for which plaintiff claimed he had received no payment as well as fifteen other vehicles for which he

---

[1] Deller Corporation was also named as a defendant.  Debtor's counsel, however, stipulated at the trial of this matter that the debt at issue in the state court action was owed by debtor as an individual and was not owed by Deller Corporation.  As a result of this stipulation, no mention will be made to Deller Corporation in characterizing the complaint filed in the state court action or in deciding this matter.

claimed to have received only partial payment.  Debtor and William Boyd, he asserted, fraudulently converted the vehicles for their own use by representing themselves to be plaintiff and then forging certain documents pertaining to the vehicles.

Count II was also against debtor and William Boyd and sought punitive damages. Plaintiff asserted that debtor and William Boyd wantonly and willfully converted the vehicles, with reckless regard for his rights.

Count III was against debtor alone and asserted a claim for breach of the guarantee debtor had executed.  Plaintiff asserted that debtor was unconditionally liable under the guarantee for the amounts owed to plaintiff from the sale of the vehicles as well as for consequential damages.

On August 31, 2007, the state court  entered judgment against debtor and William Boyd for disobeying prior discovery orders.  The amount of the judgment was to be determined at a later time.

Further proceedings in state court to determine the amount of the judgment were automatically stayed when debtor filed a voluntary chapter 7 petition on March 11, 2008. Plaintiff was identified on the schedules as having an undisputed general unsecured claim in the amount of $175,000 in light of the above state court order.

The chapter 7 trustee reported after concluding the § 341 meeting of creditors that no assets of the bankruptcy estate would be available for distribution to debtor's creditors. Debtor has not yet received a discharge of all his debts.

Plaintiff commenced this adversary action against debtor on April 18, 2008, one week after the trustee reported that this was a no-asset case.  He seeks a determination that the debt owed by plaintiff is not dischargeable.  He also requested relief from stay to return to state court to determine the amount of the debt.

A default judgment was entered against debtor on May 29, 2008, when debtor failed to answer the complaint.  The default judgment subsequently was vacated at debtor's request on July 18, 2008.  Shortly thereafter debtor answered the complaint.

The matter has been tried and is now ready for decision.

### *COMPLAINT*

The same vehicles that were at issue in the state court complaint are at issue in this adversary action.

In paragraph 10 of the complaint, plaintiff identified ten vehicles by their vehicle identification numbers (VINs) which debtor sold to third parties and for which plaintiff claims he received no payment from debtor.  In paragraph 11, plaintiff identified another fifteen vehicles debtor sold for which plaintiff claims he received only partial payment of what he was owed.

Plaintiff asserts that the debt owed by plaintiff in connection with the twenty-five vehicles is excluded from discharge by § 523(a)(2)(A) or § 523(a)(4) of the Bankruptcy Code.  He alternatively asserts that the debt is not dischargeable as a result of the guarantee debtor signed prior to the petition date in which he stipulated that any debt he owed plaintiff was not dischargeable in bankruptcy.

### *APPLICABLE LAW*

A central purpose of bankruptcy is to provide a process whereby certain insolvent debtor may "reorder their affairs, make peace with their creditors, and enjoy a new opportunity in life with a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt". *Local Loan Company v. Hunt*, 292 U.S. 234, 244, 54 S. Ct. 695, 699, 78 L.Ed 1230 (1934). This principle applies, however, only to the "honest but unfortunate debtor". *Grogan v. Garner*, 498 U.S. 279, 286-87, 111 S. Ct. 654, 659, 112 L.Ed.2d 755 (1991). A debtor in bankruptcy has no constitutional right to a discharge of all his or her debts. *United States v. Kras*, 409 U.S. 434, 445-46, 93 S.Ct. 631, 637-38, 34 L.Ed.2d 626 (1973).

Bankruptcy is not just an "ameliorative right" of a debtor; in certain instances it also provides a creditor a remedy. Protecting creditors in those instances takes precedence over a debtor's "fresh start". A debtor, may not be able to escape all of his or her pre-petition debts by the simple expedient of voluntarily commencing a bankruptcy case. *Boston University v. Mehta*, 310 F.3d 308, 311 (3dcir 2002).

Exceptions to the discharge of specific debts are set forth at § 523(a) of the Bankruptcy Code. Subsections 523(a)(2)(A) and 523(a)(4), upon which plaintiff in this case relies, provide in relevant part as follows:

> (a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt --- ....
>     (2) for money [or] property ..., to the extent obtained, by
>         (A) false pretenses, a false representation, or actual fraud, other than a statement in writing respecting the debtor's or an insider's financial condition;.... [or]

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or fraud;....

11 U.S.C. § 523(a).

Due to the objective of providing a debtor in bankruptcy with a "fresh start", exceptions to the discharge of a debt that are set forth at § 523(a) are to be liberally construed in favor of the debtor and strictly construed against the objecting creditor. *Insurance Company of North America v. Cohn (In re Cohn),* 54 F.3d. 1108, 1111 (3d Cir. 1995).

### § 523(a)(2)(A)

Central Motors Auto, of which plaintiff was the sole proprietor, was the title owner of the above twenty-five vehicles when plaintiff placed them on debtor's used car lot. This is not in dispute.

When debtor sold one of the vehicles, title to the vehicle was first assigned by Central Motors to New Image Auto Sales, which then assigned title to the purchaser of the vehicle. This also is not in dispute.

Consider first the ten vehicles identified in paragraph 10 of the complaint for which plaintiff claims he received no payment from debtor. With one exception[2], evidence presented at trial establishes that the assignments of title to the vehicles identified in paragraph 10 of the complaint to New Image Auto Sales were executed either by William Boyd or Steve Greco, both of whom were employees of debtor when they executed the

---

[2] The lone exception was a 2001 Suzuki Grand Vitara (VIN # JS3TX92V714110173). Plaintiff produced no evidence indicating who executed the assignment of title to the vehicle to New Image Auto Sales and whether debtor verified the signature of the individual who assigned title to the vehicle.

assignments.  The evidence also establishes that debtor, a licensed auto dealer, verified the signatures of the individual who executed the assignments for the nine vehicles.

The central issues of fact with respect to plaintiff's § 523(a)(2)(A) claim (as well as his § 523(a)(4) claim) concern: (1) who had possession of the certificates of title when title to a vehicle was assigned to New Image Auto Sales: and (2) whether William Boyd or Steve Greco had authority to execute the assignments of title to New Image Auto Sales on behalf of Central Motors.

Plaintiff and debtor offered conflicting testimony pertaining to these issues.

Plaintiff testified that the certificates of title were in the possession of debtor in case a potential purchaser asked to see one before purchasing a vehicle.  Plaintiff further testified that he had not authorized William Boyd and Steve Greco to execute the assignments of title to New Image Auto Sales on behalf of Central Motors.

Debtor testified that plaintiff had possession of the certificates of title for the vehicles and brought the certificate for a vehicle to the used car lot once debtor had sold it.  According to debtor, title to the vehicle could not be assigned to New Image Auto Sales until plaintiff brought the certificate to the lot of New Image Auto Sales.  He further testified that William Boyd and Steve Greco had authority to execute the assignments of title on behalf of Central Motors.

Plaintiff's testimony concerning these matters was credible whereas debtor's was not.  The certificates of title to the vehicles identified in paragraph 10 of the complaint were kept at the place of business of New Image Auto Sales.  Only plaintiff (or an

authorized agent of his) had authority to execute the assignments of title to the vehicles identified in paragraph 10 of the complaint. William Boyd and Steve Greco had no such authority.

Debtor's counsel asked plaintiff in an accusatory manner during cross-examination whether debtor had authorized William Greco to execute the assignments of title for four of the vehicles identified in paragraph 10 of the complaint. Plaintiff steadfastly denied that he had done so. The obvious point of the question was to leave the court with the impression that plaintiff in reality had authorized William Boyd and Steve Greco to execute the assignments of title to New Image Auto Sales. Merely asking a question of a witness, however, does not constitute evidence of anything. Had plaintiff called William Boyd to testify, for instance, debtor might have undermined plaintiff's testimony on this point. Plaintiff did not do so.

As we understand it, plaintiff claims that debtor committed fraud within the meaning of § 523(a)(2)(A) by verifying the signatures of William Boyd and Steve Greco when they assigned title to the vehicles in question to New Image Auto Sales while knowing that they had no authority to assign title to the vehicles.

In the majority of instances, a creditor must establish each of the following to prevail under § 523(a)(2)(A):

(1) debtor made a representation;
(2) debtor knew the representation was false;
(3) the representation was made with intent deceive the creditor;
(4) the creditor actually and justifiably relied on the representation; and
(5) the creditor sustained a loss as a proximate result of its reliance.

*General Electric Capital Corporation v. Acosta (Matter of Acosta)*, 406 F.3d 367,372 (5th Cir. 2005).

The objecting creditor has the burden of proving each of these elements by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. at 291, 654 S.Ct. at 661, 111 L.Ed.2d 755 (1991).

Subsection 523(a)(2)(A) requires expressly requires that the fraud be "actual". Implied or constructive fraud will not suffice. *Palmacci v. Umpierrez*, 121 F.3d 781, 787 (1st Cir. 1997).

Plaintiff has failed to establish by a preponderance of the evidence that all of these requirements are satisfied in this case.  For instance, he has not identified any specific false representation(s) debtor allegedly made.  As far as we are able to determine, plaintiff focuses on certain promises debtor made in the oral agreement which gave rise to their business relationship.

 A false representation must purport to depict a *current or past* fact to qualify as a representation for purposes of § 523(a)(2)(A).  A *promise* to do something *in the future* is not sufficient to make a debt non-dischargeable pursuant to § 523(a)(2)(A) even if a debtor has no excuse for breaking the promise.  *Bercier v. Bank of Louisiana (Matter of Bercier*, 934 F.2d 689, 691 (5th Cir. 1991).  Thus, any promise debtor made pertaining to what he would do in the future upon selling one of the above vehicles does not qualify as a false representation for purposes of this provision.

- 10 -

Plaintiff's failure to prove each of the above requirements is not, however, necessarily fatal to his § 523(a)(2)A) claim.

The most common type of fraud within the meaning of § 523(a)(2)(A) is predicated upon a deliberate misrepresentation or a deliberately misleading omission. *McClellan v. Cantrell*, 217 F.3d 890, 892 (7th Cir. 2000); also *Mellon Bank v. Vitanovich (in re Vitanovich)* 259 B.R. 873, 877 (6th Cir. 2001). Actual fraud in this context, however, is not limited to such misrepresentations. It also encompasses "any deceit, artifice, trick or design involving direct and active operation of the mind which is used to circumvent or deceive another." M*cClellan*, 217 F.3d at 893.

Approaching plaintiff's § 523(a)(2)(A) claim from this perspective, we conclude that the debt owed to plaintiff in connection with nine of the ten vehicles identified in paragraph 10 of the complaint is excluded from discharge. The evidence presented by plaintiff establishes that debtor knowingly participated in a scheme to cheat or deprive plaintiff of payments to which he was entitled when debtor sold a vehicle plaintiff had placed on debtor's used car lot.

We determined previously that the certificates of title to the vehicles in question were in debtor's possession and that William Boyd and Steve Greco had no authority to execute the assignments of tile to the vehicles from Central Motors to New Image Auto Sales. Only plaintiff (or his authorized agent) had authority to execute the assignments.

Debtor, a hands-on used car dealer, was aware that only plaintiff (or his authorized agent) had authority to execute the assignments of title from Central Motors to New Image

- 11 -

Auto Sales.  This knowledge notwithstanding, debtor verified the signatures of William Boyd and Steve Greco when they executed the assignments of title.

Debtor did so to circumvent his obligation to pay plaintiff what he owed him.  He instead used the money to pay other creditors who were chasing debtor for payment of what he owed them.  With the certificates of title to the vehicles in his possession, debtor seized the opportunity to circumvent his obligation to pay plaintiff and to use the money to pay his other creditors.  Had plaintiff been in possession of the certificates of title, debtor would not have had the opportunity to transfer title to the vehicle to New Image Auto Sales without plaintiff knowing about it at the time.

This conclusion applies only to nine of the ten vehicles identified in paragraph 10 of the complaint.  Plaintiff, it was pointed out previously, produced no evidence pertaining to the assignment of title for a 2001 Suzuki Grand Vitara automobile plaintiff had placed on debtor's used car lot and for which he received no payment when debtor sold it to a third party.  Specifically, plaintiff produced no evidence indicating that William Boyd or Steve Greco executed the assignment of title to New Image Auto Sales.  He also produced no evidence indicating that debtor had verified the signature of the individual who executed the assignment of title.

Because of this lack of proof, we have no basis for concluding that debtor cheated plaintiff out of what he was owed from the sale of 2001 Suzuki Grand Vitara.  The debt arising  from the sale of this specific vehicle therefore is not excluded from discharge by § 523(a)(2)(A) of the Bankruptcy Code.

What about the fifteen vehicles identified in paragraph 11 of the complaint?  Is the debt owed in connection with the sale of these vehicles excluded from discharge by this provision?

Plaintiff's § 523(a)(2)(A) claim with respect to these vehicles fails for the same reason as did plaintiff's claim with respect to the 2001 Grand Vitara.  He produced no evidence indicating who executed the assignments of title for the vehicles to New Image Auto Sales.  He also produced no evidence that debtor verified the signature(s) of the individual(s) who executed the assignments.

To summarize what we have concluded thus far, we conclude that except for the 2001 Suzuki Grand Vitara, the debt owed to plaintiff in connection with the vehicles identified in paragraph 10 of the complaint, is excluded from discharge by § 523(a)(2)(A).  As for the fifteen vehicles identified in paragraph 11, the debt is *not* excluded from discharge by § 523(a)(2)(A).

### § 523(a)(4)

Is the debt owed in connection with the 2001 Suzuki Grand Vitara  that is identified in paragraph 10 of the complaint and the fifteen vehicles identified in paragraph 11 excluded from discharge by § 523(a)(4)?

Plaintiff claims that the debt is excluded from discharge because debtor committed fraud or defalcation while acting in a fiduciary capacity.  Alternatively, he claims that debtor committed embezzlement.

Consider first the claim that debtor committed fraud or defalcation while acting in a fiduciary capacity.

To prevail under this theory plaintiff must prove, among other things, that: (1) debtor was acting in a fiduciary capacity; and (2) debtor committed fraud or defalcation at that time. *Heer v. Scott (In re Scott)*, 294 B.R. 620, 630 (Bankr. W.D. Pa. 2003).

The phrase "while acting in a fiduciary capacity" modifies the phrase "fraud or defalcation"; it does not modify the phrase "embezzlement of larceny". *Giarratano v. Giarratano (In re Giarratano)*, 358 B.R. 106, 110 (Bankr. D. Del. 2004). A fiduciary relationship, in other words, is not required for embezzlement or larceny to occur.

Determining whether debtor acted in a fiduciary capacity in this case is a matter of federal law. *Gupta v Eastern Idaho Tumor Institute (In re Gupta)*, 394 F.3d 347, 350 (5th Cir. 2004). The concept of a fiduciary for purposes of § 523(a)(4) is narrower than it is under other law. *Patel v. Shamrock Floor Covering Services (In re Patel)*, 565 F.3d 963, 968 (6th Cir. 2009). One may qualify as a fiduciary under non-bankruptcy law without so qualifying under § 523(a)(4).

A debtor qualifies as a fiduciary in this context only if an express or technical trust existed. *Texas Lottery Commission v. Tran (Matter of Tran)*, 151 F.3d 339, 342 (5th Cir. 1998). The duties of a debtor as trustee must exist independently of any contractual obligation a debtor may have *vis-à-vis* the creditor. *Texas Lottery Commission,* 151 F.3d at 342. A constructive trust or a trust *ex malificio* will not suffice. *Patel*, 565 F.3d at 968.

While state law is not dispositive for determining whether a debtor was a fiduciary for purposes of § 523(a)(4), it may be relevant for determining whether an express or technical trust existed. *Lewis v. Scott (In re Lewis)*, 97 F.3d 1182, 1185 (9th Cir. 1996).

The following must be present for there to be an express or technical trust under the law of Pennsylvania: (1) an intention on the part of the settlor to create a trust; (2) an ascertainable trust *res*; (3) a sufficiently certain beneficiary; and (4) a trustee who administers the *res* for the benefit of the beneficiary. *Sherwin v. Oil City National Bank*, 229 F.2d 835, 838 (3d Cir. 1956). A trustee owns the trust *res* subject to the duty to hold it for the benefit of the *cestui que trust*. *Sherwin*, 229 F.2d at 838.

The primary focus when conducting this inquiry is on the intention of the settler at the creation of the trust. *Presbytery of Beaver-Butler County of United Presbyterian Church in U.S. v. Middlesex Presbyterian* Church, 507 Pa. 255, 269 A.2d 1317, 1324, *cert. denied*, 474 U.S. 887, 198, 106 S.Ct. 198, 88 L.Ed.2d 167 (1985). A trust will be found to exist only if there is clear and unambiguous language or conduct indicating that the settlor intended to create one. *Presbytery of Beaver-Butler*, 507 Pa. at 268, 489 A.2d at 1324.

Neither of these requirements is satisfied in this instance.

The evidence produced at trial indicates that plaintiff had no intention of creating an express or technical trust when he placed the above vehicles on debtor's used car lot. He placed them there with the intention of having debtor sell them on behalf of plaintiff to third parties. Theirs was purely a commercial relationship. The fact that plaintiff

reposed a degree of trust in debtor to abide by their agreement and to act in good faith did not give rise to an express or technical trust.

The matter does not end there.  Debtor also did not own the vehicles when plaintiff placed them on debtor's used car lot.  We previously determined that Central Motors, of which plaintiff was the sole proprietor, held title to the vehicles and thus owned them when debtor sold them to third parties.

Plaintiff therefore cannot prevail under the theory that debtor committed fraud or defalcation while acting in a fiduciary capacity.  Debtor was *not* a fiduciary with respect to the sixteen vehicles still at issue.

What about plaintiff's claim that debtor embezzled plaintiff's property?

Embezzlement is defined for purposes of § 523(a)(4) as the fraudulent appropriation of property of another by a person to whom it was entrusted or into whose hands it has lawfully come. *Ginsburg v. Birenbaum (In re Birenbaum)*, 2006WL1997478, * 4 (Bankr. W.D. Pa. 2006), aff'd, 2009WL304045 (W.D. Pa. 2009).

To prevail on the claim that debtor committed embezzlement within the meaning of § 523(a)(4), a creditor must prove by a preponderance of the evidence that: (1) the owner of property entrusted it to debtor; (2) debtor appropriated the property for a use other than that for which it was intended; and (3) the circumstances indicate fraud on the part of the debtor. *Brady v. McAllister (In re Brady)*, 101 F.3d 1165, 1173 (5th Cir. 1996).

The first of these requirements is satisfied in this case.  Plaintiff entrusted debtor with the remaining sixteen vehicles when he placed them on debtor's used car lot.

- 16 -

As for the second requirement, it is not clear that debtor appropriated the sixteen vehicles for a use other than that for which they were entrusted to him. Plaintiff placed the vehicles on debtor's used car lot so debtor would sell them to third parties. Debtor did just that.

Plaintiff has failed, however, to prove that third of the requirements is present here. Consider the nine vehicles identified in paragraph 10 of the complaint for which we concluded that debtor committed fraud for purposes of § 523(a)(2)(A) of the Bankruptcy Code. We determined that debtor committed fraud with respect to these vehicles by verifying the signatures of William Boyd and Steve Greco while knowing that they had no authority to assign title to the vehicles to New Image Auto Sales.

As for the 2001 Suzuki Grand Vitara identified in paragraph 10 of the complaint and the fifteen vehicles identified in paragraph 11, we concluded that the debt owed in connection with these vehicles was not excluded from discharge by § 523(a)(2)(A) because plaintiff failed to prove that debtor committed such fraud. Plaintiff produced no evidence indicating who assigned these vehicles on behalf of Central Motors to New Image Auto Sales. He also produced no evidence indicating that debtor verified the signature(s) while knowing that the individual(s) who executed the assignments had no authority to do so on behalf of Central Motors.

This failure of proof on plaintiff's part applies with equal force to his claim that debtor committed embezzlement for purposes of § 523(a)(4). Plaintiff failed to prove the third of the above-listed requirements of embezzlement. That is to say, he failed to

- 17 -

produce any evidence establishing that debtor acted fraudulently when he appropriated the vehicles plaintiff had placed on debtor's used car lot for the purpose of selling them to third parties.

To summarize, we conclude that plaintiff's claim that the debt owed to him by debtor in connection with the sixteen remaining vehicles is excluded from discharge by § 523(a)(4) of the Bankruptcy Code must fail.

### *WAIVER OF DISCHARGE OF DEBT*

Plaintiff became concerned about debtor's continuing failure to pay what he owed plaintiff when debtor sold vehicles plaintiff had placed on debtor's used car lot. To assuage plaintiff's concern and to continue their business relationship, debtor signed a document prepared by plaintiff in which debtor guaranteed payment of the debt. Among other things, debtor stipulated that his liability was absolute and would not be affected in the event debtor wound up in bankruptcy. We take this to mean that debtor stipulated that his liability to plaintiff would not be affected if he received a bankruptcy discharge.

Relying on this, plaintiff asserts that by virtue of signing the agreement, debtor *waived* the discharge of any debt he owed plaintiff in connection with the above vehicles. This assertion lacks merit. We conclude that the debt in question cannot be excluded from discharge in the event debtor receives a general discharge in his bankruptcy case.

Debtor executed the agreement more than two years prior to the commencement of his bankruptcy case. A debtor *may not* agree prior bankruptcy to waive the discharge

of a pre-petition debt that is otherwise dischargeable. *Ginsburg*, 2006WL1997478 at * 4 (Bankr. W.D. Pa. 2006), *aff'd,* 2009WL304045 (W.D. Pa. 2009).

A pre-petition waiver of the discharge of a dischargeable debt is contrary to public policy. *Bank of China v. Huang (In re Huang)*, 275 F.3d 1173, 1177 (9th Cir. 2002). Such a waiver is not enforceable because it undermines a debtor's "fresh start", which is the primary objective of the Bankruptcy Code. *Hayhoe v. Cole (In re Cole)*, 226 B.R. 647, 6754 (9th Cir. BAP 1998).

This principle, however, is not absolute. There are two ways in which a debtor in bankruptcy may waive the discharge of an otherwise dischargeable debt. *Airlines Recording Corporation v. Mascoll (In re Mascoll)*, 246 B.R. 697, 707 (Bankr. D.C. 2000).

First, a debtor may waive the discharge of a debt by executing a *post*-petition written agreement waiving the discharge of all his or her debts that is approved by the court pursuant to § 727(a)(10) of the Bankruptcy Code. *In re Mascoll*, 246 B.R. at 206.

This provision does not apply here. First, debtor did not agree to waive the discharge of all his debts; he instead agreed to waive the discharge of the debt owed to plaintiff. In addition, the waiver was executed prior to rather than subsequent to the petition date.

Second, a debtor may waive the discharge of a pre-petition debt by executing a post-petition reaffirmation agreement that complies with the requirements of § 524(c) of the Bankruptcy Code. *Mascoll*, 246 B.R. at 706. This provision also does not apply here. Among other things, the agreement in which debtor purportedly waived the discharge of

the debt he owes plaintiff was not filed with the court, as is required by § 524(c)(3) of the Bankruptcy Code.

We therefore conclude that the document in which debtor stipulated that the pre-petition debt he owed plaintiff was not dischargeable is *not* enforceable in this case.

We further conclude that cause exists pursuant to § 362(d)(1) of the Bankruptcy Code to grant plaintiff relief from the automatic stay so he may return to state court and there determine the amount of the debt owed to him in connection with the portion of the debt that is excluded from discharge.

An appropriate order will issue.

_____*/s/*_____
**BERNARD MARKOVITZ**
U.S. Bankruptcy Judge

Dated:  **November 13, 2009**

## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF PENNSYLVANIA

IN RE:

| | | |
|---|---|---|
| **JOHN R. DELLER,** | : | **Bankruptcy No. 08-21579 BM** |
| | : | |
| | : | |
| **Debtor** | : | **Chapter 7** |
| **JAMES R. HILLMEYER,** | : | |
| | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **Adversary No. 08-2148 BM** |
| | : | |
| **JOHN R. DELLER,** | : | **Complaint For Determination That** |
| | : | **Debt Is Nondischargeable** |
| **Defendant** | : | |

### ORDER OF COURT

**AND NOW**, this **13th** day of **November**, 2009, it hereby is **ORDERED**, **ADJUDGED** and **DECREED** that:

(A) The debt owed to plaintiff in connection with the following vehicles is **NOT DISCHARGEABLE**:

(1) 2002 Chrysler PT CRUISER (VIN # 3C8FY68B22T234852;
(2) 1999 Mercedes Benz ML 320 (VIN # 4JGAB54E5XA062530);
(3) 199 Dodge Durango (VIN # 1B4HS28Y1XF573379);
(4) 2001 Dodge Ram (VIN # 1B7KF23W91J1163);
(5) 2001 Buick Park Avenue (VIN # 1G4CW54K114190918);
(6) 2001 Ford Explorer (VIN # 1FMZU83P51ZA53031);
(7) 1989 Toyota truck (VIN # JT4VN13D2K50101191);
(8) 2001 Honda Civic (VIN # 2HGES26761H523215); and
(9) 2000 Ford Expedition (VIN # 1FMPU18L7YLA47829).

Plaintiff is **GRANTED** relief from the automatic stay to proceed in state court to determine the amount of the debt owed in connection with these vehicles; and

(B) The debt owed to plaintiff in connection with the following vehicles is **DISCHARGEABLE:**

    (1)  2001 Suzuki Grand Vitara (VIN # JS3TX92V714110173);
    (2)  2000 Dodge Durango (New Image Stock # 291708);
    (3)  2 001 Ford Mustang GT (New Image Stock # 169564);
    (4)  1998 Toyota Avalon (New Image Stock # 274658);
    (5)  2000 Pontiac Montana (New Image Stock # 263244);
    (6)  2001 Subaru Forrester (New Image Stick # 722479);
    (7)  2000 Toyota Tundra (New Image Stock # 023271);
    (8)  2001 Ford F-150 (New Image Stock # B06049);
    (9)  2000 Jeep Grand Cherokee (New Image Stock 166132);
    (10)  2002 Chevy Avalanche (New Image Stock # 257981);
    (11)  Unknown (Trade in was a 1997 Ford Explorer);
    (12)  1997 Ford X-Cab (New Image Stock # A23475);
    (13)  1995 Toyota Camry (VIN # 4T1SK12E5SU635479);
    (14)  1992 Chevrolet S10 Blazer (Unknown);
    (15)  1992 Toyota Camry (Unknown); and
    (16)  2000 Dodge Ram (VIN # 3B7HF12Z4YG127747).

It is **SO ORDERED**.

                                                **/s/**
                                  **BERNARD MARKOVITZ**
                                  U.S. Bankruptcy Judge

***Case Administrator to mail to:***
    Debtor
    Robert O Lampl, Esquire
    James R. Cooney, Esquire
    Mark A. Ciccarelli, Esquire
    Carlota M. Böhm, Esquire
    United States Trustee